No. 28,353.

THE WICHITA WATER COMPANY, *Plaintiff*, v. THE PUBLIC SERVICE COMMISSION OF THE STATE OF KANSAS, R. M. PICKLER, CLARENCE SMITH, JOHN H. CRAWFORD, W. B. DALTON and W. C. MILLAR, as Members of Said Commission, *Defendants.*

(268 Pac. 89.)

Opinion filed June 9, 1928.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston,* all of Wichita, and *Frank H. Mason,* of New York, N. Y., for the plaintiff.

*William A. Smith,* attorney-general, *M. J. Healy, John M. Kinkel* and *C. B. Randall,* all of Topeka, for the defendants.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus to compel the public service commission to assume jurisdiction of the application of the Wichita Water Company for authority to issue its first-mortgage five per cent gold bonds, series B, in the amount of $350,000, and to grant the application. The plaintiff is a corporation engaged in the business of supplying water for public and private use, the plant and property of which are situated and operated principally within the city of Wichita, and which plant and property are operated principally for the benefit of such city and its inhabitants. Plaintiff's application for permission to issue the bonds was duly presented to the public service commission, which, having heard evidence and argument of counsel in support thereof, and being fully advised in the premises, found that the Wichita

Water Company is a public utility situated and operated wholly, or principally, within the city of Wichita, and operated principally for the benefit of that city and its inhabitants, and "that this commission has no jurisdiction or authority over the issuance of the securities of said applicant corporation," and dismissed the application for want of jurisdiction.

In this proceeding there is no controversy over the facts, and there is but one issue of law, namely, whether the public service commission, under our statute, and specifically under R. S. 66-125, has jurisdiction to entertain the application above mentioned of the water company and authority to issue its certificate provided for in the statute just referred to.

Prior to 1911 the duties of the state regulatory body, then the state board of railroad commissioners, pertained only to railroads. (See Gen. Stat. 1909, art. 3, ch. 99.) By the cities act (Laws 1903, ch. 122; Laws 1907, ch. 114 [in part revised in R. S. 13-431, 13-432, 13-434]), cities were authorized to grant franchises for all electric light, water, heat, gas or telephone service furnished the inhabitants by any person, firm, or corporation, to prescribe and fix maximum rates and charges therefor, and to provide punishment for persons who might wrongfully interfere with the same, and this without regard to whether the person, firm, or corporation furnishing the service supplied one or many cities. In 1911 our legislature enacted a comprehensive public utilities act (Laws 1911, ch. 238), creating the public utilities commission, having jurisdiction over public utilities generally, including railroads, and whose power and authority, as supplemented, amended or modified (see R. S. 66-101 *et seq.*), has been passed on to the present defendant, the public service commission (Laws 1925, ch. 258). This act provided:

"The term 'public utility,' as used in this act, shall be construed to mean every corporation, company, individual, association of persons, their trustees, lessees or receivers, that now or hereafter may own, control, operate or manage, except for private use, any equipment, plant, generating machinery, or any part thereof, . . . for the production, transmission, delivery or furnishing of heat, light, water or power: *Provided,* That this act shall not refer to or include mutual telephone companies. . . . Nothing in this act shall apply to any public utility in this state owned and operated by any municipality. The power and authority to control and regulate all public utilities and common carriers situated and operated wholly or principally within any city or principally operated for the benefit of such city or its people, shall be vested exclusively in such city, subject only to the right to apply for relief to

said public utilities commission as hereinafter provided in section 33 of this act." (R. S. 66-104.)

It will be noted that while this act was comprehensive in its scope, it specifically did not include within its provisions, (1) mutual telephone companies, (2) public utilities owned by municipalities, and (3) subject to the right to apply to the public utilities commission for relief as provided in section 33 of the act, it left or vested the power to regulate such utilities as are situated and operated wholly or principally within any city for the benefit of such city or its people, exclusively in such city. The matters referred to in section 33 of the act relate to the kind and quality of service, rates, the extension of the physical properties of the utility, and to providing penalties, and similar matters; they do not relate to the financing of the utilities nor to stock, bonds or other securities they might issue. Since the power to control and regulate "one-city" utilities is vested exclusively in such city, except as provided in section 33, and since the section 33 refers to matters other than the internal financial affairs of the utility owner, it necessarily follows that the public utilities act gives the defendant commission no jurisdiction over such financial affairs of such "one-city" utilities.

But plaintiff cites, and relies on:

"A public utility or common carrier may issue stocks, certificates, bonds, notes or other evidences of indebtedness, payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, for the purpose of carrying out its corporate powers, the construction, completion, extension or improvements of its facilities, or for the improvements or maintenance of its service, or for the discharge or lawful refunding of its obligations, or for such other purposes as may be authorized by law: *Provided,* And not otherwise, that there shall have been secured from the commission a certificate stating the amount, character, purposes and terms on which such stocks, certificates, bonds, notes or other evidences of indebtedness are proposed to be issued, as set out in the application for such certificate, and that the statements contained in such application have been ascertained to be true, but this provision shall not apply to any lawful issue of stock, the lawful execution and delivery of any mortgage, or to the lawful issue of any bonds thereunder which shall have been duly approved by the board of railroad commissioners prior to the taking effect of this act. . . . Any issue of stocks, certificates, bonds, notes or other evidences of indebtedness not payable within one year, which shall be issued by such public utility or common carrier contrary to the provisions of this act shall be void." (R. S. 66-125.)

And R. S. 66-126 makes it an offense for any common carrier or public utility "governed by the provisions of this act," or its officers,

agents or directors, to issue any stock, bonds, or other evidence of indebtedness "contrary to the provisions of the act."

Plaintiff argues that since the term "public utilities" is defined in R. S. 66-104 as including water companies, and since R. S. 66-125, which relates to the issuance of securities, provides that a public utility may issue stock, bonds, etc., only after securing a certificate from defendant, that the term "public utilities," as used in R. S. 66-125, necessarily includes all public utilities as defined by the act. This construction would require the obtaining of a certificate of authority for issuing stock certificates, bonds, etc., by a mutual telephone company, or a municipally owned utility, as well as by a one-city utility. We regard this interpretation as being untenable. The more natural interpretation of R. S. 66-125 is to restrict its application to that class of utilities which comes within the provision of the public utilities act. It is difficult to see why the legislature should attempt to regulate the issuing of stock, bonds or other securities of public utilities if it was not by the act attempting to regulate, supervise or control it. Defendant advises us that in the seventeen years since the enactment of the public utilities act it has not been the practice for mutual telephone companies, municipally owned utilities, or one-city utilities to apply to defendant for a certificate of authority to issue stocks, certificates, bonds, or other evidence of indebtedness. It is reasonable to assume that many such issues have been made. The effect of interpreting the statute as plaintiff contends would be to hold all such issues to be void. While this is not necessarily a controlling reason for our conclusion, it is at least persuasive. We regard our conclusion that the public service commission has no jurisdiction over the application for a certificate to issue bonds applied for by the plaintiff in this case as being the correct interpretation of the statute. Certainly the penal provisions of R. S. 66-126 should not be compelled to rest upon a strained interpretation of the statute to include classes of utilities that quite obviously were not included within the provisions of the act.

While the specific question here determined has not been previously decided by this court, our former decisions which bear any relation to the question, in so far as they do relate to it, are regarded as being in harmony with the conclusion here reached. (State, ex rel., v. Gas Co., 88 Kan. 165, 127 Pac. 639; City of Emporia v. Telephone Co., 90 Kan. 118, 133 Pac. 858; State, ex rel., v.

*Water Co.*, 92 Kan. 227, 140 Pac. 103; *Humphrey v. City of Pratt*, 93 Kan. 413, 417, 144 Pac. 197; *Street Lighting Co. v. Utilities Commission*, 101 Kan. 438, 774, 166 Pac. 514, 169 Pac. 205; *City of Parsons v. Water Supply and Power Co.*, 104 Kan. 294, 178 Pac. 438; *City of Great Bend v. Water Co.*, 106 Kan. 553, 189 Pac. 146; *City of Winfield v. Court of Industrial Relations*, 111 Kan. 580, 207 Pac. 813; *City of Hutchinson v. Hutchinson Gas Co.*, 125 Kan. 346, 264 Pac. 68.)

Judgment will be entered for defendant.